**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


John M. Escobar, III

    v.                                              Civil No. 12-cv-167-JL

Richard Gerry, Warden,
New Hampshire State Prison et al.[1]


**REPORT AND RECOMMENDATION**


    John M. Escobar, an inmate at the New Hampshire State
Prison ("NHSP"), has filed a complaint (doc. no. 1) and a motion
to amend the complaint (doc. no. 12), alleging that NHSP
employees and officials have violated his federal constitutional
and state law rights.  Because Escobar is a prisoner, the matter
is before the court for preliminary review to determine whether
it states any claim upon which relief might be granted.  See 28
U.S.C. § 1915A(a); United States District Court District of New
Hampshire Local Rule ("LR") 4.3(d)(2).

---

    [1]Escobar has named the following defendants to this action:
New Hampshire Department of Corrections Commissioner William
Wrenn; and New Hampshire State Prison ("NHSP") employees: Warden
Richard Gerry, Lt. Greenwood (first name unknown ("FNU")); Lt.
Santo Fiorillo; Cpl. Mike Miller; Nurse Brad Bowden; Corrections
Officers FNU Hazard, FNU McDonald, FNU Thurber, and FNU Hill;
and NHSP inmate Timothy Zanis.

Escobar has also filed a motion for injunctive relief (doc. no. 13). That motion has been referred to this magistrate judge for a recommendation as to disposition.[2]

I.   Preliminary Review

    A.   Standard of Review

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se in forma pauperis complaints before defendants have an opportunity to respond to the claims. The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To survive preliminary review, the complaint must contain "sufficient

_____

[2]The factual assertions contained in the complaint (doc. no. 1), the motion to amend the complaint (doc. no. 12), and the motion for injunctive relief (doc. no. 13) filed by Escobar are considered, in the aggregate, to be the allegations in the complaint in this matter for all purposes.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010).  To determine plausibility, the court treats as true all well-pleaded factual allegations, and construes all reasonable inferences drawn therefrom in the plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Applying this standard, the court considers the allegations in Escobar's complaint.

B.  Background

On November 5, 2010, NHSP inmate Timothy Zanis threw an apple at Escobar's head in the NHSP chow hall.  NHSP Corrections Officers ("C.O.s") Thurber and Hill were in the chow hall at the time.  The officers did not intervene, and Escobar got up to move to the area where the officers were standing.  Zanis then assaulted Escobar by hitting him on the right side of the head, which caused him to bump into Thurber and then fall to the floor.  Escobar did not attempt to retaliate or fight back.

After Escobar fell to the ground, Thurber and Hill handcuffed him, despite his complaints of back and neck pain.  Escobar was placed in the "south tank" for at least three hours without any response to his pain complaints.  After three hours,

Escobar was handcuffed and escorted to the NHSP Health Services Center ("HSC").  Although Escobar complained to a nurse at the HSC of back and neck pain, she told him that he was only at HSC to undergo a routine psychological questionnaire administered to inmates who are transferred to the prison's Secure Housing Unit ("SHU").  According to the nurse, Lt. Greenwood had directed that Escobar be placed there.

Escobar was housed in SHU for one week, until November 12, 2010.  During that time, Escobar made multiple requests to see a member of the medical staff, but, he alleges, his requests were ignored.

On November 11, 2010, Sgt. Santo Fiorillo and Cpl. Mike Miller saw Escobar at SHU to discuss the assault.  The officers advised Escobar that if his statement matched Zanis's, he could be released from SHU, but that if it did not, he would have to remain in SHU pending investigation of the incident.  After providing his statement, Escobar was moved out of SHU.

On November 15, 2010, Escobar again requested medical attention for his neck and back injuries.  Escobar went to the HSC and was seen by Nurse Brad Bowden.  Bowden scheduled Escobar for an appointment to see the physician's assistant, Corina Neccoli, the following day.  Neccoli gave Escobar a one-week prescription for Vicodin, and had x-rays taken that day.

4

On November 22, 2010, Escobar reported to the HSC at sick call and told Bowden that his symptoms were worsening.  Bowden accused Escobar of drug-seeking and denied him any medical treatment.  Bowden wrote in Escobar's medical records that Escobar has cirrhosis, which Escobar claims was false, so that no one else would prescribe pain medication for Escobar.

Approximately eight to ten months after he was injured, Escobar was scheduled for an MRI, which revealed serious damage to his spine at the base of his neck and some damage to the disks in his lower back, which Escobar alleges was caused by the November 5, 2010, assault and fall.  On September 7, 2011, Escobar had major surgery at the Dartmouth-Hitchcock Medical Center ("DHMC") to replace two disks at the base of his neck with titanium plates.  To date, Escobar's lower back injuries have been treated nonsurgically.

On September 8, 2011, NHSP C.O.s Hazard and MacDonald transferred Escobar from the hospital to the NHSP.  Escobar alleges that while they were driving out of the parking lot of the hospital, Hazard suddenly, and for no apparent reason, applied the brakes, causing the car to jerk.  The sudden motion caused Escobar to scream out in pain.  The officers laughed. Shortly thereafter, Hazard again suddenly applied the brakes

unnecessarily.  Again, Escobar screamed, and the officers
laughed.

Since his September 2011 surgery, Escobar has been provided
with a CT Scan on December 1, 2011, and an MRI on March 30,
2012.  Those tests showed damage to two disks in Escobar's
lumbar spine.

Escobar alleges that he continued to receive treatment at
the DHMC until July 30, 2012, pursuant to a treatment plan
created by DHMC physicians.  On July 30, Escobar saw NHSP
physician Dr. Eppolito, who decided to discontinue Escobar's
treatment at the DHMC, and instead prescribed a glucosamine
supplement and Naproxen to treat Escobar.  Escobar asserts that
due to a previous gastrointestinal problem, he is unable to take
any of the class of drugs which includes Naproxen, and that this
restriction has been repeatedly documented in Escobar's prison
medical records.

     C.   <u>Federal Claims</u>

          1.   <u>Failure to Protect</u>

Escobar asserts that C.O.s Thurber and Hill violated his
Eighth Amendment right to safe conditions of confinement by
failing to protect him from the assault by Zanis.  "A prison
official's 'deliberate indifference' to a substantial risk of
serious harm to an inmate violates the Eighth Amendment."

Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (quoting
Farmer v. Brennan, 511 U.S. 825, 828 (1994)).  Prison officials
have a "constitutional duty 'not to be deliberately indifferent
to the risk to prisoners of violence at the hands of other
prisoners.'"  Mosher, 589 F.3d at 493 (quoting Burrell v.
Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002)); see also
Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63-64 (1st Cir.
2002) (allowing Eighth Amendment claim where prison officials
failed to protect inmate from attack by other inmates).

     An Eighth Amendment claim for failure to protect has both
an objective and a subjective component.  See Mosher, 589 F.3d
at 493; Calderón-Ortiz, 300 F.3d at 64.  The complaint must
first allege conditions that are "objectively, sufficiently
serious," which means the conditions of confinement posed a
"substantial risk of serious harm."  See id. (quoting Farmer,
511 U.S. at 833.  With respect to the subjective component of a
failure to protect claim, the plaintiff must allege facts
demonstrating that defendants had a "sufficiently culpable state
of mind," which is one of "'deliberate indifference' to an
inmate's health or safety."  Calderón-Ortiz, 300 F.3d at 64
(quoting Farmer, 511 U.S. at 834).  Deliberate indifference
requires a showing that the prison official was subjectively

aware of a substantial risk of serious harm to an inmate and disregarded that risk.  <u>Farmer</u>, 511 U.S. at 828-29.

Here, Escobar states that Zanis threw an apple at him in the prison's chow hall before the assault, and that Thurber and Hill failed to intervene at that point, resulting in an assault on Escobar that caused him serious injury.  Escobar does not state that either officer saw Zanis throw an apple, or that if they did, that they were actually alerted to the fact that Escobar was about to be assaulted.  Escobar does not allege that he told the officers of any risk to him or that he asked the officers for assistance or protection.  Because Escobar has failed to allege facts to demonstrate that either Thurber or Hill were actually aware of the imminent risk of harm to Escobar, he cannot state an Eighth Amendment claim against them. The failure to protect claims asserted against Thurber and Hill should be dismissed.

### 2.   <u>Medical Care</u>

The Supreme Court has adopted a two-part test for reviewing claims asserted under the Eighth Amendment alleging inadequate medical care.  <u>See</u> <u>Farmer</u>, 511 U.S. at 834.  A court must first determine if the prisoner has alleged facts sufficient to show that he or she has not been provided with adequate care for a "serious medical need."  <u>Id.</u>  Second, the court must determine

if the complaint contains sufficient allegations to show that
defendants acted with deliberate indifference in failing to
provide adequate care to address that serious need.  See id.

Deliberate indifference "may be shown by the denial of
needed care as punishment and by decisions about medical care
made recklessly with 'actual knowledge of impending harm, easily
preventable.'"  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir.
2007) (citation omitted).  Deliberate indifference may also be
found "in wanton decisions to deny or delay care, where the
action is recklessness, not in the tort law sense but in the
appreciably stricter criminal-law sense."  Watson v. Caton, 984
F.2d 537, 540 (1st Cir. 1993) (internal citation and quotations
omitted).  Allegations that simply show "substandard care,
malpractice, negligence, inadvertent failure to provide care,
and disagreement as to the appropriate course of treatment are
all insufficient to prove a constitutional violation."  Ruiz-
Rosa, 485 F.3d at 156.

a.   SHU

Escobar assets that he was sent to SHU pursuant to Lt.
Greenwood's instructions, and that during the week he was there,
his requests for medical attention were ignored.  Escobar has
failed to identify any individual defendant to this action, or
any facts that would demonstrate that a presently unnamed

9

official failed to respond to his requests for medical care with
actual awareness that such a failure would create a substantial
risk of serious harm to Escobar.  Accordingly, he has failed to
state a claim for inadequate medical care arising out of his
one-week stay in SHU.

b.    Brad Bowden

Escobar states that on one occasion, when he requested
treatment for worsening symptoms related to his neck and back
injuries, Bowden accused him of drug-seeking and placed false
information in his medical record to stop other care providers
from prescribing medication.  Escobar does not state that he was
denied any other treatment from Bowden or anyone else as a
result of Bowden's actions.  The one-time denial of medical care
from Bowden, without any alleged adverse consequences, does not
suffice to state a claim that Bowden denied Escobar
constitutionally adequate medical care.

c.    Dr. John Eppolito

Escobar contends that Dr. Eppolito improperly stopped
Escobar's treatment at the DHMC in favor of treatment with a
supplement and an anti-inflammatory, in part because Escobar
could not take the anti-inflammatory.  Escobar does not state
that Dr. Eppolito ever denied him care, simply that he denied

him the care of his choice.  Further, there is no indication
that the prescription of the anti-inflammatory was intentional
or designed to harm Escobar, or that it was more than an
oversight of the documentation in his record.  Accordingly, the
facts alleged are insufficient to establish an Eight Amendment
medical care claim against Dr. Eppolito, and the claim should be
dismissed.

### 3.   Intentional Infliction of Pain

Escobar asserts that his Eighth Amendment right not to be
subjected to cruel and unusual punishment was violated when C.O.
Hazard suddenly applied the brakes in the car in which Escobar
was a passenger, shortly after Escobar's spinal surgery.
"'[T]he unnecessary and wanton infliction of pain . . .
constitutes cruel and unusual punishment forbidden by the Eighth
Amendment.'"  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting
Whitley v. Albers, 475 U.S. 312, 319 (1986)).  While an
officer's de minimis use of force against an inmate does not
implicate the constitution, a prisoner may assert an Eighth
Amendment violation "[w]hen prison officials maliciously and
sadistically use force to cause harm."  Hudson, 503 U.S. at 9-10
(bruises, swelling, loosened teeth and cracked dental plate
resulting from officers' beating of inmate not de minimis for
Eighth Amendment purposes).  An officer's use of non-de minimis

11

excessive force may constitute an Eighth Amendment violation
even where the inmate suffers no serious injury.  See Wilkins v.
Gaddy, 130 S. Ct. 1175, 1178-79 (2010) (per curiam) (citing
Hudson, 503 U.S. at 7).

Here, less than twenty-four hours after he had major neck
surgery, Escobar alleges that Hazard twice slammed on the brakes
of the car in which Escobar was a passenger for no reason, and
that, at least the second time, he did so with awareness that it
would cause Escobar a great deal of pain.  Escobar's allegations
about the sudden braking of the car, and its foreseeable effects
upon a passenger, are sufficient to show an excessive use of
force intended "maliciously and sadistically . . . to cause
harm."  These allegations thus state a plausible claim of an
Eighth Amendment violation against C.O. Hazard.  In an order
issued simultaneously with this report and recommendation (the
"Simultaneous Order"), the court directs that this claim be
served on Hazard.

As to MacDonald, he is alleged only to have laughed at
Escobar when he screamed.  Such allegations may show the
officer's lack of humanity and professionalism, but do not
state any claim upon which relief might be granted.
Accordingly, the Eighth Amendment claim asserted against
MacDonald should be dismissed.

4.    Retaliation (First Amendment Claim)

Escobar alleges retaliation claims against Fiorillo and Miller for threatening him with continued confinement in SHU if he did not make a particular statement, and against Dr. Eppolito for changing Escobar's treatment because Escobar filed this lawsuit.  The First Amendment shields prisoners from retaliation in response to their engaging in protected speech.  Ortiz v. Jordan, 131 S. Ct. 884, 893 (2011) (citing Crawford–El v. Britton, 523 U.S. 574, 592 (1998)).  To state a claim for retaliation for exercising his First Amendment rights, Escobar must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) some adverse action at the hands of the prison officials; and (3) a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012).

To satisfy the second element of a retaliation claim, Escobar must show that defendants took an adverse action against him.  De minimis reactions to protected speech will not satisfy that requirement.  See Pope v. Bernard, No. 10-1443, 2011 U.S. App. LEXIS 2764, at *4, 2011 WL 478055, at *2 (1st Cir. Feb. 10, 2011), cert. denied, 132 S. Ct. 261 (2011).  A defendant's

reaction to protected speech is not de minimis, however, if defendant's conduct would deter an individual of ordinary firmness from exercising his or her First Amendment rights.  See id.

### a.   Fiorillo and Miller

Escobar alleges that Fiorillo and Miller came to his segregation cell to speak to him about the assault by Zanis, and told Escobar that if he didn't agree with Zanis's statement, he would have to stay in segregation for the duration of the investigation into the assault.  Escobar asserts that Fiorillo and Miller intended to coerce Escobar into giving up his right to disagree with Zanis's statement in order to cover up the assault, presumably to protect NHSP personnel from liability for the assault.

The fact that Escobar was told that he would be in segregation until the investigation was concluded, whether the investigation was concluded right away by his agreement with Zanis's statement, or after further investigation, is insufficient to demonstrate more than a de minimis act.  Escobar does not describe conditions in segregation that would cause the court to reasonably infer that remaining in segregation in that unit would be so coercive as to deter an inmate of ordinary

firmness from exercising his First Amendment right to describe an assault against him.

Additionally, Escobar's assertion that the officers had any intention of covering up the assault is conclusory and lacks any specific factual support.  For these reasons, Escobar has failed to state any retaliation claim against Fiorillo or Miller, and those claims should be dismissed.

### b.   Dr. Eppolito

Escobar's claim that Dr. Eppolito changed his treatment plan in retaliation for filing this lawsuit is a bald allegation, entirely unsupported by any factual assertion.  As such, it should be dismissed.

### 5.   Supervisory Defendants

Escobar asserts that NHSP Warden Richard Gerry and New Hampshire Department of Corrections Commissioner William Wrenn are liable for the acts of the defendants in their supervisory capacities.  Except for the claims asserted against Hazard, discussed above, nothing in the complaint states any constitutional claim upon which relief might be granted.  Where no constitutional violation is asserted against their subordinates, Gerry or Wrenn cannot be liable in their supervisory capacities for such a violation.

With respect to the section 1983 claim asserted against Gerry and Wrenn based on the conduct of Hazard in the parking lot, claims asserted against a supervisor in a § 1983 action may not ordinarily be based on a theory of respondeat superior, see Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012). Instead, claims against prison supervisors must be based on the supervisor's own acts or omissions constituting "supervisory encouragement, condonation or acquiescence, or gross negligence of the supervisor amounting to deliberate indifference." Id. (alteration, internal quotation marks, and citation omitted). Escobar does not allege that either Gerry or Wrenn were personally involved in, or even aware of Hazard's conduct in the hospital parking lot.  Accordingly, Escobar's § 1983 claims asserted against Gerry and Wrenn should be dismissed.

     D.   State Law Claims

This court may exercise its supplemental jurisdiction over state law claims that arise out of the same case or controversy as federal claims properly before it, and may decline to exercise supplemental jurisdiction where all of the claims over which the court has original jurisdiction have been dismissed. 28 U.S.C. § 1367(a) and (c)(3).  Further grounds for declining to exercise supplemental jurisdiction include circumstances where the state law claim substantially predominates over the

federal claim over which the district court has original

jurisdiction.  See id. § 1367(c)(1).

### 1.   C.O. Hazard

Escobar has asserted that C.O. Hazard negligently or

intentionally caused him severe pain when he allegedly slammed

on the brakes twice for no reason in the hospital parking lot.

The facts alleged in the complaint are sufficient to state

plausible tort claims alleging Hazard's negligence in driving a

car in a manner that foreseeably resulted in Escobar's pain and

suffering, as well as Hazard's intentional act in driving a car

and applying the brakes in a manner, which was allegedly

intended to cause, and did in fact cause, Escobar to suffer

severe pain.  Accordingly, in the Simultaneous Order, the court

has directed service of such claims upon Hazard.

### 2.   Timothy Zanis

Escobar asserts a state law assault claim against Timothy

Zanis, the inmate who allegedly attacked him.[3]  Litigating a tort

claim against Zanis relating to the assault would involve

evidence regarding the inmates' history, the circumstances of

---

[3]Zanis, as a private individual, cannot be held liable for
any violation of Escobar's constitutional rights.  See González-
Maldonado v. MMM Healthcare, Inc., No. 11-1880, 2012 U.S. App.
LEXIS 18913, at *6, 2012 WL 3871531, at *2 (1st Cir. Sept. 7,
2012).

the fight between them, and their individual intentions.  This
evidence is not related to any claim remaining in this case.
Such issues would likely cause this claim to substantially
predominate over the remaining federal claim in this case.
Therefore, the court should decline to exercise supplemental
jurisdiction over the claim against Zanis.  This claim should be
dismissed without prejudice to Escobar's ability to pursue the
claim in state court.

### 3.   Supervisory Negligence

Escobar has, in a conclusory manner, alleged that Gerry and
Wrenn should be liable in their supervisory capacity for
negligence, relating to Hazard's tortious conduct.  Escobar
generally alleges that he believes that the subordinate officers
previously engaged in improper behavior that their supervisors
knew or should have known about.  Escobar has failed, however,
to allege facts showing that Wrenn or Gerry negligently failed
to supervise or train Hazard, or that Hazard's alleged act of
cruel and unusual punishment resulted from negligent training or
supervision.  A bald assertion that a supervisor is responsible
for an employee's negligence, without any specific supporting
facts, is insufficient to state a claim.  See Iqbal, 129 S. Ct.
at 1949.  Accordingly, the negligence claims asserted against
Gerry and Wrenn should be dismissed.

18

4.    Remaining State Law Claims

Escobar raises state law tort claims in conjunction with
most of the federal constitutional claims that this court has
identified above.  As explained above, this court recommends
that all such federal claims be dismissed, except for the Eighth
Amendment claim asserted against C.O. Hazard.  Should the
district judge accept that recommendation, he should also
decline to exercise supplemental jurisdiction over Escobar's
state law claims that do not concern C.O. Hazard, as the
evidence required to prove such claims would likely cause those
claims to substantially predominate over the only federal claim
remaining in the case.

II.  Preliminary Injunction (Doc. No. 13)

Escobar seeks a preliminary injunction directing prison
medical personnel to provide him with certain medical care. "A
plaintiff seeking a preliminary injunction must establish that
he is likely to succeed on the merits, that he is likely to
suffer irreparable harm in the absence of preliminary relief,
that the balance of equities tips in his favor, and that an
injunction is in the public interest."  Winter v. Natural Res.
Def. Council, Inc., 555 U.S. 7, 20 (2008); see also Voice of the
Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32

(1st Cir. 2011).  The movant must show a likelihood of success on the merits as a prerequisite to obtaining preliminary injunctive relief.  See Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) ("if the moving party cannot demonstrate that he is likely to succeed in his quest," preliminary injunctive relief is properly denied without further analysis).

Here, the claim underlying the request for injunctive relief asserts that Escobar was deprived of constitutionally adequate medical care at the prison.  In this report and recommendation, the court has recommended that Escobar's medical care claims be dismissed as insufficient to assert an Eighth Amendment violation.  Accordingly, the court further finds that Escobar is not likely to succeed on the merits of these claims, and recommends that the request for injunctive relief be denied on that basis.

### Conclusion

For the foregoing reasons, this court recommends that all of the federal claims and state law claims asserted in the complaint (doc. nos. 1, 12 and 13) be dismissed, with the exception of Eighth Amendment and state law tort claims against C.O. Hazard, which the court directs to be served in the

Simultaneous Order.  This court further recommends that the motion for a preliminary injunction (doc. no. 13) be denied.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


September 27, 2012

cc:  John M. Escobar, III, pro se

LBM:jba